## Cryer v. Conway.

(Decided October 4, 1918.)

## Appeal from Jefferson Circuit Court (Chancery Division No. 2).

1. Contracts—Contract to Pay for Personal Services.—Where the relationship between parties and the circumstances are such as to create the presumption, that they reside in the same household for their mutual benefit, a contract between them to the effect, that one is obligated to pay the other for personal services rendered is not implied, and an express, contract is necessary for a recovery.

2. Contracts—Contract to Pay for Personal Services.—The general rule applicable to persons,-who reside in the same house, and are not so related and the circumstances are not such as to raise the implication that they reside as a household for their mutual convenience, where personal services are rendered, and necessaries and comforts furnished, with the expectation of the one to charge and receive compensation therefor, and with the expectation upon the part of the one receiving the benefits to pay therefor, a promise will be implied on the part of the one receiving to pay the other what the services are reasonably worth.

3. Homestead—Exemptions.—Where the owner of a homestead voluntarily abandons it, with the intention of permanently living elsewhere, and of never resuming the occupation of his homestead, the property ceases to be exempt from coercive sale for the payment of his debts.

4. Fraudulent Conveyances—Sale of Property—Distribution of Proceeds of Sale.—Where a debtor, in contemplation of insolvency, and with the design to prefer a creditor conveys his property to the creditor, who accepts the conveyance in good faith, without fraudulent co-operation with the debtor, and the conveyance is set aside, at the suit of a creditor, as a preferential conveyance, the debt to the grantee is entitled to share in the proceeds of a sale of the property, upon equal terms, with other debts of the same dignity.

EDWARDS, OGDEN & PEAK and EDWARD BLOOMFIELD for appellant.

BENJAMIN F. GARDNER for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

Jesse Moore and his wife were the joint owners of a small lot and house in the city of Louisville, upon which they resided. The wife died while she and her husband were residing in the house. Thereafter, in the month of

July, 1913, the appellee, Maggie Conway and her husband, entered into a contract with Moore, by the terms of which it was agreed that the appellee and her husband would occupy Moore's house, as tenants, and for the rent of the house and five dollars per month they would board Moore. Moore was to have a room in the house, which he furnished with his own furniture. The appellee and her husband were not to furnish a fire in Moore's room, and he was to use the fire maintained in their room while at the house. He was to take his meals with the appellee and her husband, and she was to clean his room and keep it in order. Within a few days after the parties began to operate under this contract Moore became so unwell that he was obliged to go to a hospital for medical care and treatment, where he was operated upon for a cancer upon his face, and he remained at the hospital for eighteen days. Thereafter he was unable to take his meals with appellee and her husband, being unable to eat any kind of solid food, and appellee furnished him soup and milk and such food as he could eat, and when the weather made it necessary, made and maintained a fire in his room, and carried his meals to his room for him, which he took while lying in bed. In November following, he was compelled to go to a hospital for further medical and surgical treatment, where he remained for a period of nineteen days. After he returned from the hospital, at this time, he occupied his room and bed nearly all the time, and appellee besides preparing and carrying his meals to him in his room, and maintaining a fire therein when the season made it necessary for his comfort, she washed and bathed the cancerous growth and wound upon his face, assisted him in taking his food, and gave him such personal attentions as his condition demanded, including watch over him, both during the day and night. He had but one arm, making necessary acts of assistance which would have been unnecessary, if he had had two arms. In giving him these attentions, it required the constant attention and time of appellee. These conditions continued until about the first days of July, 1914, when Moore went to live with the appellant, Margaret B. Cryer, his sister. From July 14, 1913, until Moore left his house, in 1914, the appellee and her husband, upon their part and Moore upon his part, performed

the terms of their contract, with reference to the rent of the house and the payment of board, but the services rendered for Moore by appellee, which were not embraced in the contract for the rent of the house, the appellee rendered for Moore, under an agreement between her and Moore, that he would compensate her for such services. This is proven by appellee and others, as well as the services rendered, and Moore made a will in which he provided for the payment of appellee for the services, in the event of his death. The interest in the house and lot was all the property owned by Moore, and after he went to reside with appellant he conveyed his entire interest in the house and lot to appellant, and thereafter, about July 30, 1915, he died, intestate. The consideration for the conveyance to appellant was the sum of $220.00, which appellant had furnished to him, and the further agreement upon her part to furnish him a home and care for him as long as he lived. When appellee learned of the making of the deed of conveyance to appellant, she instituted this suit against Moore and appellant for the recovery of the reasonable value of the services performed by her for Moore, and for which he agreed to pay her, and to set aside the deed of conveyance to appellant, and to subject Moore's interest in the house and lot to the payment of the debt. The deed was sought to be set aside upon the alleged grounds that it was made by Moore for the fraudulent purpose of defeating the collection of appellee's debt, and with the intention of preferring the appellant as a creditor. The court adjudged that the appellee recover of Moore the sum of $480.00; that the deed was a preferential conveyance, and that it be set aside; that Moore owed appellant the sum of $220.00, and that the interest of Moore in the property be sold, and the proceeds, after payment of costs be distributed ratably to all of his creditors, except that all other indebtedness should be paid before the claim of the appellant should participate in the distribution. The payment of costs and taxes, and a portion of the other claim, allowed, left nothing to be paid upon the claim of appellant for $220.00. She has appealed to this court, and urges that the judgment should be reversed:

(1) The recovery of any sum by appellee was erroneous.

(2)   The property was the homestead of Moore, and exempt from sale for the payment of his debts, and for that reason the conveyance by him was not preferential nor fraudulent.

(3)   The sale and conveyance was one which was not interdicted by either section 1906 or 1910 of Ky. Stats.

(4)   It was error to adjudge, that the payment of appellant's claim should be deferred, until after the payment of all other claims against Moore.

(a)   It is not insisted that the services for which appellee recovered were not rendered, or that they were not of the value adjudged by the court, but that the services were gratuitous, and were rendered and received without any expectation of compensation upon the part of either Moore or appellee, and that they were embraced in the contract which Moore had with appellee and her husband. That the services were not embraced in the contract which appellee and her husband made with Moore for the rent of the house and to board him   is apparent without further consideration. The evidence does not support the contention that appellee knew Moore's condition when she and her husband contracted to board him, or that the services were within the contemplation of any of the parties, when making the contract touching the rental of the house. The petition alleges, that the services were rendered at the special instance and request of Moore, and upon his promise to pay therefor, and such constitutes an express contract, and the evidence seems to support the allegation and that appellee rendered the services, in consideration of the promise to pay by Moore. The appellee and Moore were not in anywise related, and were living in the same house under a contract, the terms of which required each one to pay the other for everything obtained from the other. Hence no presumption arises, that they were occupying the same house for their mutual convenience, and that personal services were rendered by appellee for Moore gratuitously. Hence the rule invoked, that the law does not raise a promise to pay one for personal services rendered by such one for another member of the household, where their relationship and circumstances are such as to create the presumption that they are living in the same house for their mutual convenience, and before recovery

can be had for such services, that an express contract must exist to that effect, as held in Bolling v. Bolling's Admr., 146 Ky. 314; Allen v. Allen, 158 Ky.,. 760; Turner v. Young's Extr., 155 Ky. 607; Conway, etc. v. Conway's, etc., 130 Ky. 218; Faley v. Dillon, etc., 100 S. W. 561; Wallace v. Denny's Admr., 90 S. W. 1046; Reynolds v. Reynolds, 92 Ky. 556, and others, has no application. If there was no express contract in the instant case, its facts would place it more properly under the general rule, applicable to persons who reside together, in the same house, that where personal services are rendered by one party and necessaries and comforts are furnished by such party for the other, with the expectation of charging and receiving compensation for them, and they are received by the other with the expectation of making compensation for them, a promise by the party who receives will be implied, to pay the other what the services are reasonably worth. Walker v. Ganote, 116 S. W. 689; Smith v. Park's Admr., 27 R. 12; Lowe's Admr. v. Webster, 19 R. 1208; Failey's Admr. v. Thompson, 20 R. 1179.

(b) That one may sell or otherwise dispose of his homestead without the transaction falling under the imputation of having been done in fraud of a creditor, or in preference of any creditor, there is no doubt. Tong v. Eifort, 80 Ky. 152; Roark v. Bach, 116 Ky., 460; Fuqua v. Ferrill, 80 Ky. 69; Baker v. Kinnaird, 94 Ky. 5. This doctrine, however, can not have application to the facts of this case. Moore and wife had occupied the house and lot as a homestead, and Moore was entitled to hold it as such. The death of his wife did not deprive him of his right of homestead already acquired. Stultz v. Sale, 92 Ky. 5; Suter v. Quarles, 22, R. 1080; Rothwell v. Rothwell, 31 R. 851. His voluntary abandonment of his homestead, however, destroyed his right to claim it as such, as against his creditors. His right to the property, as an exemption, as in every case of a claim of homestead, depended upon his actual purpose and intention to use the property as a home for himself. When he left the property, some months before, he conveyed it to appellant and went to reside with her, in Anderson county, he declared to his neighbors, that he never expected to return to, or to occupy the property as his home. It is insisted, that because

he was in a feeble state of health, and left the property to go to live at the home of his sister, in order that she might give him care and attention, that the case falls within the principle announced in that line of cases which holds that a debtor does not abandon his homestead, where he temporarily leaves it, with the present intention of returning to it, after the accomplishment of some present purpose, or where his absence from it is enforced, as in the case of a prisoner or a lunatic. In the instant case, however, the abandonment was voluntary, and with the intention of never resuming its occupation, and to permanently make his residence elsewhere. In such state of case the homestead exemption is lost. Carter v. Goodman, 11 Bush 228; Brown v. Martin, 4 Bush 47.

(c) Moore did not own any other property, except his interest in the house and lot. He knew that he was insolvent, and when he had made a conveyance of his interest in the house, there was nothing left to satisfy his other creditors. To satisfy the statute there must be an intent on the part of the debtor to prefer the creditor, to the exclusion of other creditors, and the conveyance must be made in contemplation of insolvency, but, when an insolvent debtor conveys away all of his property in the payment of the debt the intent to prefer will be presumed. Grimes v. Grimes, etc., 86 Ky. 511; Thompson v. Heffner's Extrs., 11 Bush 353; Hampton v. Morris, etc. 2 Met. 336.

(d) The evidence does not support the contention that the appellant, in accepting a conveyance of the house and lot was fraudulently aiding or assisting Moore in defrauding his creditors. The conveyance on the part of Moore was one made in contemplation of insolvency, and with the design on his part to prefer the appellant, as a creditor. So far as the evidence discloses, the appellant in accepting the conveyance, did so, without any intention to fraudulently co-operate with Moore in defeating his creditors, but accepted the conveyance as a payment of his pre-existing indebtedness to her, and for her services, in the future. The only ground upon which the conveyance is vitiated, upon the part of appellant, is that it was an attempted preference of a creditor, made by Moore, and in contemplation of his insolvency. The statute, section 1910, Ky. Statutes,

prescribes what shall be the effect of such a conveyance, in the following language: "Shall operate as an assignment and transfer of all the property and effects of such debtor, and shall inure to the benefit of all his creditors, in proportion to the amount of their respective demands. etc." Section 1916, Ky. Stats., designates what claimants shall be entitled to a preference in the distribution, as debts owing by the debtor as a guardian, personal representative or trustee, and the claims of creditors having valid liens. It was therefore error to adjudge, that in the distribution of the proceeds of the sale of the house and lot, in the instant case, that the payment of the debt owing to appellant should be deferred, until the other debts of Moore were satisfied. Her claim was entitled to share *pro rata* with other claims of equal dignity, such as the demand of appellee. For the error made with reference to the distribution of the assets, only, the judgment is reversed, and cause remanded for proceedings consistent with this opinion.